# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| AMB. JONATHAN SCOTT GRATION, MAJ. GEN., USAF (RET.), JUDITH ELLEN GRATION, JONATHAN SCOTT GRATION, JR., BARRY GORDON BROWN, EVA RANEE GRAHAM, COREY THOMAS BROWN, ANGELA MASHEL BROWN, ALEXIS NICHOLE WINGATE, STEVEN LEE BYERS, DONNA LEE BYERS, RODNEY LEE BYERS, JOSEPH EUGENE BYERS, TIMOTHY GERARD FERMANIS, KEVIN RICHARD MALL, JOHN CHARLES ORLANDO, JR., URSULA LEONA ORLANDO, KENNETH DAVID WEAVER, JIMMY OLEN WEAVER, SUSAN PAULINE POMORANSKY, VICKIE RENA ANTHONY, CLINTON EDWARD WEAVER, DONALD LEE HEIKES, ROGER DAYLE HEIKES, RONALD SCOTT GERING, AUBREE BROOKE STARICKA, BRENT ALAN MULLINGS, TINA MARIE MULLINGS, GLORIA ANN MULLINGS, VERNON OSCAR MULLINGS, HEATHER MAUREEN HECTOR, SY WILLIAM YOST, | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **SECOND AMENDED COMPLAINT** **Civil Action No. 12-cv-01859-BAH** |

| | |
|---|---|
| MARIA STAR YOST, | § |
| | § |
| SERENA ELIZABETH DOUGLASS, | § |
| SARAH GRACE DOUGLASS, | § |
| STEVEN MILLARD DOUGLASS, | § |
| | § |
| | § |
| JOEY LAURIER MORRISSETTE, | § |
| DIANE THERESA MORRISSETTE, | § |
| NATASHA KAMI MORRISSETTE, | § |
| JERIMIAH JOE MORRISSETTE, | § |
| | § |
| | § |
| NATHAN ELLIOTT WHEAT, | § |
| DONALD ALLEN WHEAT, | § |
| | § |
| VINCENT GENE OLIVER, | § |
| TAMARA LEE OLIVER, | § |
| | § |
| STEVEN LEE BRODT, | § |
| UN SUK BRODT, | § |
| STEVEN HAN BRODT, | § |
| SAMUEL JOHN BRODT, | § |
| | § |
| ESTATE OF LT. CO. STEVEN PETER | § |
| GOFF, M.D., | § |
| SHIRLEY ANN GOFF, | § |
| ANTOINETTE MARIE HOVEL, | § |
| KATHRYN MARY ABLEIDINGER, | § |
| | § |
| JAMES MICHAEL SILVI, | § |
| JO ANN SILVI, | § |
| ANGELA CHRISTINE SILVI, | § |
| ALISON ELIZABETH SILVI, | § |
| | § |
| DAVID ANTHONY TOOLE, | § |
| MICHELE ANN CANCHOLA, | § |
| TIMOTHY LOUIS CANCHOLA, | § |
| | § |
| FRANKO JAMES FERGUSON, | § |
| | |
| CHRISTINA MARIE SCHOMAKER, | |
| PAULA GAIL NOTT, | |
| PRESTON WADE NOTT, | |
| KRISTINE LYNNETTE SCHOMAKER, | |
| TANYA LEA NOTT, | |
| REBECCA LAMAE THURMAN, | |

MICHAEL HARRINGTON WEEMS,
NANCY PEARL ROBERTSON WEEMS,
JOHN HAROLD WEEMS,
RICHARD LAWRENCE WEEMS,

BRIAN CHRISTOPHER STONEBURNER,

SCOTT PATRICK HILL,
KIMBERLEE JO HILL,

CHRISTOPHER BRIAN LAUDERBACK,

JACQUELINE ARCHULETA QUINTANA,

SUSAN LYNN WHITE,
JERRY WHITE,

JASON ALLEN BRATTON,

KENNETH MICHAEL KOWAZLCZYK,
PATRICIA MARY KOWAZLCZYK,
KENNETH DALE KOWAZLCZYK, and
AARON CHARLES KOWAZLCZYK.


(Addresses to be filed under seal with permission)

Plaintiffs,

v.


THE ISLAMIC REPUBLIC OF IRAN
The Ministry of Foreign Affairs
Imam Khomeini Street
Imam Khomeini Square
Tehran, Iran
1136914811

THE ISLAMIC REVOLUTIONARY
GUARD CORPS ("IRGC")
Armed Forces Headquarters Iran
Tehran – Zone 7 – Shariati
Ghoddoosi Square (Ghaar)

| Tehran, Iran<br><br>IRANIAN MINISTRY OF INTELLIGENCE & SECURITY<br>(a/k/a Vezarat-e Ettela'at Va Amniat-e Keshvar a/k/a VEVAK a/k/a VAJA)<br>Second Negarestan Street<br>Pasdaran Avenue<br>Tehran, Iran<br><br>Defendants. | |
|---|---|

## COMPLAINT

Plaintiffs bring this action under the terrorism exception to the Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A ("FSIA") against Defendants the Islamic Republic of Iran, the Iranian Islamic Revolutionary Guards Corps ("IRGC") and the Iranian Ministry of Intelligence and Security ("MOIS") for damages arising out of the June 25, 1996, terrorist attack on the Khobar Towers complex in Dhahran, Saudi Arabia ("Attack"). On that day, Hezbollah terrorists, acting at the direction and with the material support of Defendants Iran and its agents the IRGC and MOIS, detonated a 5,000-pound truck bomb outside the complex, which housed United States military personnel.[1] The blast from this bomb sheared off the entire face of the Khobar Towers complex and shattered windows more than half a mile away. The blast killed 19 Air Force servicemembers and injured many others. This Court has previously recognized liability for the Attack by these Defendants and co-conspirators.[2]

Plaintiffs are twenty-six (26) injured servicemembers and fifty-five (55) of their immediate family members. They seek compensatory and punitive damages under the Foreign

---

[1] The pronunciation and spelling of "Hezballah" ("Hezbollah"; "Hizballah"; "Hizbu'llah), is based on region and dialect, but all translate to the "Party of Allah."
[2] *Blais v Islamic Republic of Iran*, 459 F. Supp. 2d 49 (D.D.C. 2006); *Estate of Heiser v Islamic Republic of Iran*, 466 F. Supp. 2d 229 Id.D.C.2006); *Rimkus v Islamic Republic of Iran*, 575 F. Supp. 2d 181, (D.D.C. 2008).

Sovereign Immunities Act, 28 U.S.C. §1605A(c), and under other applicable state and federal law, against Defendants the Islamic Republic of Iran, the Iranian Ministry of Intelligence and Security, and the Islamic Revolutionary Guard  Corps, jointly and severally, and in support of their Complaint allege as follows:

## I. JURISDICTION and VENUE

1.      This Court has jurisdiction over this matter and over the Defendants pursuant to 28 U.S.C. §§ 1330(a), 1330(b), 1331, 1332(a) and 1605A, which create subject-matter and personal jurisdiction for civil actions for wrongful death and personal injury against State Sponsors of Terrorism and their officials, employees, and agents.

2.      The Foreign Sovereign Immunities Act, 28 U.S.C. § 1605A(c), provides a federal private right of action against a foreign state that is or was a State Sponsor of Terrorism, and also against any official, employee, or agent of that foreign state while acting within the scope of his or her office, employment or agency, for wrongful death, personal injury, and related torts.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(f).

## II. THE PARTIES

### A.  Plaintiffs

4.      **Plaintiff Ambassador Jonathan Scott Gration, Major General, USAF (Ret.)** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Amb. Gration, Maj. Gen., USAF (Ret.), age 44, was serving as Colonel and Commanding Officer of the 4404th Operations Group Provisional, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  At the time of the Attack, Amb. Gration, Maj. Gen., USAF (Ret.) was walking from the bathroom to his bed in Suite 5-3 of Building 101 on the fifth floor.

He saw a bright flash engulf the room, followed immediately by a deafening boom. The force of the blast shattered the windows causing glass shards to deeply puncture his left side and legs, causing profuse bleeding. Despite his injuries, Amb. Gration, Maj. Gen., USAF (Ret.), grabbed whatever clothing he could find in the dark and went to assist with evacuating the seriously and critically wounded servicemembers from the bombed building, Khobar Towers Building 131. Amb. Gration, Maj. Gen., USAF (Ret.) set up a triage center in the dining facility for treating the mass casualties and assisted in getting the wounded transported to Landstuhl Medical Center in Ramstein, Germany. Amb. Gration, Maj. Gen., USAF (Ret.) then sought medical treatment for the injuries he sustained, including painful ringing in his ears and sutures for the lacerations. Following the Attack, Amb. Gration, Maj. Gen., USAF (Ret.), was tasked with ascertaining the missing under his command and subsequently eulogizing the fallen servicemembers at a memorial service. As a result of the Attack, Amb. Gration, Maj. Gen., USAF (Ret.), suffers from permanent psychological and physical injuries including adjustment disorder with anxiety, Post Traumatic Stress Disorder ("PTSD"), constant ringing in his ears diagnosed as tinnitus, and hearing loss that requires the use of hearing aids. He also suffers from hypertension with the onset being from the Attack, which progressed to congestive heart failure and related symptoms. Amb. Gration, Maj. Gen., USAF (Ret.) was awarded a Purple Heart, an Air Force Commendation Medal, and a Meritorious Service Medal (Fifth Oak Leaf Cluster) for his injuries and actions following the Attack. As a result of the Attack, and the injuries he suffered, Amb. Gration, Maj. Gen., USAF (Ret.), has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

5.      **Plaintiff Judith Ellen Gration** is a United States citizen and is domiciled in the State of Florida. She is the wife of Amb. Jonathan Scott Gration, Maj. Gen., USAF (Ret.).

6.      **Plaintiff Jonathan Scott Gration, Jr.** is a United States citizen and is domiciled in the State of Alaska. He is the son of Amb. Jonathan Scott Gration, Maj. Gen., USAF (Ret.).

7.      As a result of the June 25, 1996, Attack and Amb. Gration, Maj. Gen., USAF (Ret.)'s injuries, family members Judith Ellen Gration and Jonathan Scott Gration, Jr., suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Amb. Gration, Maj. Gen., USAF (Ret.) continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

8.      **Plaintiff Barry Gordon Brown** is a United States citizen and is domiciled in the State of Nevada. On June 25, 1996, Mr. Brown, age 26, was serving as Staff Sergeant, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Brown was located in the Fitness Center Gym at the Khobar Towers complex.  Following the explosion, he felt the immense blast wave and the mirrors around him exploded.  Glass shards sprayed the gym. Mr. Brown collected and moved the bloodied and injured servicemembers from the gym to the underground parking garage and was later assigned to clean the debris and wreckage covering the Fitness Center caused by the Attack. In doing so, he seriously injured his right shoulder rotator cuff, for which he was later treated. He also assisted in the recovery and removal efforts in Building 131, where he was horrified by the discovery of bodies of two young soldiers whom he knew from the Fitness Center and was tasked with processing their remains. Mr. Brown suffered significant permanent injuries as a result of the Attack, including lacerations, a right rotator cuff injury, hypertension with heart disease, IBS, constant ringing in his ears diagnosed as tinnitus, sleep apnea, and PTSD and associated symptoms including frequent

panic attacks, claustrophobia, and constant anxiety.  Mr. Brown was awarded the Air Force Commendation Medal with Valor for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Brown has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

9.      **Plaintiff Eva Ranee Graham** is a United States citizen and is domiciled in the State of Florida. She is the former spouse of Barry Gordon Brown.

10.      **Plaintiff Corey Thomas Brown** is a United States citizen and is domiciled in the State of Florida. He is the son of Barry Gordon Brown.

11.      As a result of the June 25, 1996, Attack and Mr. Brown's injuries, family members, including former spouse, Eva Ranee Graham, and their son, Corey Thomas Brown, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Brown continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

12.      **Plaintiff Angela Mashel Brown**, formerly known as Angela Mashel Wingate, is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Ms. Brown, age 25, was serving as Senior Airman, Services Specialist, 18 Services Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Ms. Brown was finishing her work shift at a recreation center at the Khobar Towers complex. She heard a sudden, blaring explosion and felt the force of the blast which caused her body to feel like it was being ripped apart. Ms. Brown was frozen in fear and shock as she watched her fellow servicemembers suffering from significant injuries. She witnessed mangled bodies and

blood everywhere. Ms. Brown suffered severe permanent physical injuries from the Attack, including lung damage from inhaling the smoke and fumes from the explosion, and damage to her ears including constant ringing diagnosed as tinnitus. She also suffers from PTSD, severe insomnia, sleep apnea, flashbacks, anxiety, panic attacks, and depression. As a result of the Attack and the injuries she suffered, Ms. Brown has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

13.     **Plaintiff Alexis Nichole Wingate** is a United States citizen and is domiciled in the State of Kentucky. She is the daughter of Angela Mashel Brown.

14.     As a result of the June 25, 1996, Attack and Ms. Brown's injuries, family member Alexis Nichole Wingate suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Ms. Brown continue to have a lasting effect on her daughter and have taken a significant toll on their relationship.

15.     **Plaintiff Steven Lee Byers** is a United States citizen and is domiciled in the State of Iowa. On June 25, 1996, Mr. Byers, age 21, was serving as A1C 55th Maintenance Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Byers was located on the fourth floor of Building 130, sitting on the edge of a couch in the day room watching the news. The force of the blast exploded the nearby glass door and launched Mr. Byers into the air. He was then slammed against a wall across the room and fell to the ground, landing on his head and neck. Although injured, Mr. Byers was able to get himself up and escape to his bedroom suite. There, he grabbed his roommate's mattress and flipped it over himself, preparing for subsequent attacks. Mr. Byers realized he was bleeding and emerged from his cover to seek treatment. Once outside, Mr. Byers witnessed total

chaos and destruction. The images of critically wounded servicemembers were seared into his brain and formed memories that would never leave him. Suddenly, Mr. Byers collapsed and was eventually taken to a hospital by ambulance. Mr. Byers suffered significant injuries from the Attack, including embedded glass shards in both his knees, an exposed tendon in his left knee, painful contusions throughout his body, and ringing in his ears. Mr. Byers also suffers from PTSD, symptoms from a traumatic brain injury, permanent back pain, neuropathy, knee pain, scarring, constant ringing in his ears, and hearing loss. Mr. Byers was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack and the injuries he suffered, Mr. Byers has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

16.     **Plaintiff Donna Lee Byers** is a United States citizen and is domiciled in the State of Iowa. She is the mother of Steven Lee Byers.

17.     **Plaintiff Rodney Lee Byers** is a United States citizen and is domiciled in the State of Iowa. He is the father of Steven Lee Byers.

18.     **Plaintiff Joseph Eugene Byers** is a United States citizen and is domiciled in the State of Iowa. He is the brother of Steven Lee Byers.

19.     As a result of the June 25, 1996, Attack and Mr. Byer's injuries, family members Donna Lee Byers, Rodney Lee Byers, and Joseph Eugene Byers, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Byers continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

20.     **Plaintiff Timothy Gerard Fermanis** is a United States citizen and is domiciled in the State of Georgia. On June 25, 1996, Mr. Fermanis, age 36, was serving as a Communications Technician Sergeant for 609 ACOM Headquarter Central Communication, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Fermanis was located on the first floor of Building 102, closing the window curtains. The blast wave shattered the glass window and threw him across the room. He was knocked unconscious and lacerated by glass shrapnel. When he awoke, he felt excruciating pain in his head, shoulder, and legs. Glass penetrated deep into his knee, and he began to bleed profusely. He quickly wrapped his knee with what he could find in the debris-filled room and scrabbled to escape the building in search of help and safety. Once outside, he was surrounded by complete chaos and destruction. He witnessed fellow servicemembers suffer gruesome injuries and he administered buddy-care and aid to those he could. His rescue efforts led him to the triage center, where he later received treatment for his own injuries, which included the removal of the glass shards that were still deeply embedded in his knee. Mr. Fermanis stayed at the Complex for days following the Attack to restore the internet, during which time he saw constant reminders of the Attack and the damage it caused. Mr. Fermanis sustained extensive shrapnel wounds to his legs, foot, and toes that caused permanent scarring. Mr. Fermanis also suffers from pain in his right knee from residual glass shrapnel, constant ringing in his ears diagnosed as tinnitus, osteoarthritis in both knees, and PTSD and other related symptoms including sleep issues, anxiety, and panic attacks. Mr. Fermanis was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Fermanis has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life,

and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

21.    **Plaintiff Kevin Richard Mall** is a United States citizen and is domiciled in the State of Oregon. On June 25, 1996, Kevin Richard Mall, age 25, was serving as a Senior Airman Munitions Craftsman, 322nd Equipment Maintenance Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Mall was lying on his bed, listening to music with headphones, on the third floor of Building 104. Suddenly, there was a huge explosion. The force from the blast threw him from his bed into two wall lockers across the room, where he was slammed down to the floor. The nearby air conditioning unit shot out from the wall and crashed down on top of him, rendering him unconscious. When he awoke, he had a large, throbbing bump on his head and an intense headache. Dust and debris permeated the air and filled his eyes, mouth, and throat. Glass from the blown-out windows covered the floor. In order to escape his room, Mr. Mall was forced to dig himself out. He sustained numerous cuts to his hands and feet while moving beds, metal lockers, a couch, a door, and a 100-pound doorframe. He located his boots and put them on before noticing they were full of glass shards. The glass shredded his feet and caused additional bleeding. Mr. Mall made his way out of the building, tending to his own injuries since triage was overwhelmed, then assisted in rescue operations and providing medical attention to wounded personnel. In the days following the Attack and for the next eight weeks that he remained at Khobar Towers, Mr. Mall also worked as part of the Crash and Recovery Team. He retrieved bodies and body parts from the wreckage, collected explosives, and prepared caskets for his fellow servicemembers and loaded them onto the aircraft. Along with the trauma of the Attack, his recovery duties caused severe emotional distress, paranoia, and horrific nightmares. Mr. Mall also suffered significant physical injuries

from the Attack, including a concussion and severe lacerations to his feet that caused permanent scarring. He also suffers from survivor's guilt, and PTSD with adaptation disorder and other related symptoms. Mr. Mall was awarded an Air Force Achievement Medal, an Air Force Achievement Medal (Second Oak Leaf Cluster), and an Air Force Achievement Medal (First Oak Leaf Cluster) for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Mall has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

22.     **Plaintiff John Charles Orlando, Jr.** is a United States citizen and is domiciled in the State of Pennsylvania. On June 25, 1996, Mr. Orlando, age 30, was serving as Staff Sergeant, Non-Commissioned Officer in Charge of Information Management, 58th Fighter Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Orlando, Jr. was sitting on a couch watching television in the dayroom in Building 129 on the first floor. There was a large flash, loud explosion, and a strong blast wave that threw him to the floor. Stunned, Mr. Orlando, Jr. managed to stand up. His ears were ringing, and his legs had been pierced by the shattered glass from the window. Mr. Orlando, Jr. did not realize the extent of the bleeding to his left calf until he was outside heading towards the chow hall. Mr. Orlando, Jr. suffered significant permanent injuries from the Attack including nerve damage in his left leg and foot. Mr. Orlando, Jr. personally knew many of the servicemembers who were killed and severely wounded. He is still haunted by the gruesome events of that day. Mr. Orlando, Jr. was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Orlando, Jr. has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life,

and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

23.     **Plaintiff Ursula Leona Orlando** is a United States citizen and is domiciled in the State of Pennsylvania. She is the wife of John Charles Orlando, Jr.

24.     As a result of the June 25, 1996, Attack and Mr. Orlando's injuries, family member Ursula Leona Orlando suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Orlando, Jr. continue to have a lasting effect on his wife and have taken a significant toll on their relationship.

25.     **Plaintiff Kenneth David Weaver** is a United States citizen and is domiciled in the State of Alabama. On June 25, 1996, Kenneth David Weaver, age 29, was serving as an E5, Torpedo Man EMZ 2nd Class, United States Navy, temporarily stationed in Dhahran, Saudi Arabia, at the Khobar Towers complex. At the time of the Attack, Mr. Weaver was in the process of evacuating his building due to a fire alarm sounding. As Mr. Weaver moved towards the door of the lobby to exit, he heard a loud explosion and felt the subsequent blast wave. The blast knocked him off his feet causing injury to his back and head. He was in a haze, he could not hear, and his mouth was gritty from the debris and dust that filled the lobby. There was turmoil in the lobby, and everyone ran towards the exit. Mr. Weaver pulled himself up and rushed out of the building to find the bus that was supposed to transport him to his ship. Once he was safely on the ship, Mr. Weaver was evaluated for his injuries and treated according to the concussion protocol. Mr. Weaver suffered cuts to his back and legs from the flying glass, ringing in his ears, a pounding headache, and an injury to his back from the shockwave of the blast. Mr. Weaver also suffers from constant ringing in his ears diagnosed as tinnitus, permanent back issues, and PTSD and associated symptoms including insomnia, loss of memory, anger issues, and sensitivity to his surroundings

and loud noises. As a result of the Attack, and the injuries he suffered, Mr. Weaver has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

26.      **Plaintiff Jimmy Olen Weaver** is a United States citizen and is domiciled in the State of Alabama. He is the father of Kenneth David Weaver.

27.      **Plaintiff Susan Pauline Pomoransky** is a United States citizen and is domiciled in the State of Arkansas. She is the half-sister of Kenneth David Weaver.

28.      **Plaintiff Vickie Rena Anthony** is a United States citizen and is domiciled in the State of Alabama. She is the sister of Kenneth David Weaver.

29.      **Plaintiff Clinton Edward Weaver** is a United States citizen and is domiciled in the State of New Mexico. He is the brother of Kenneth David Weaver.

30.      **Plaintiff Donald Lee Heikes** is a United States citizen and is domiciled in the State of Alabama. He is the half-brother of Kenneth David Weaver.

31.      **Plaintiff Roger Dayle Heikes** is a United States citizen and is domiciled in the State of New Mexico. He is the half-brother of Kenneth David Weaver.

32.      As a result of the June 25, 1996, Attack and Mr. Weaver's injuries, family members Jimmy Olen Weaver, Susan Pauline Pomoransky, Vickie Rena Anthony, Clinton Edward Weaver, Donald Lee Heikes, and Roger Dayle Heikes suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Weaver continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

33.    **Plaintiff Ronald Scott Gering** is a United States citizen and is domiciled in the State of Nebraska. On June 25, 1996, Ronald Scott Gering, age 30, was serving as an Electronics System Switching Specialist, 755th Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Gering was exiting the shower in Building 101. The lights suddenly went out and he heard an enormous explosion. The force of the blast knocked Mr. Gering to his knees. In the total darkness, he stood up and scrambled to find clothing, tripping and falling several times due to debris, injuring his back. He could hear people all around him screaming to evacuate the building. He rushed towards the stairs to escape, but the broken glass covering the floors forced him back to his room to retrieve his boots. He escaped to an underground garage where he waited for orders. While there, he witnessed seriously injured servicemembers arriving with devastating and gruesome wounds. In the aftermath, without regard for his personal safety, Mr. Gering searched tirelessly through the debris and rubble to find vital components of the medical equipment needed to treat the mass casualties. Mr. Gering suffered permanent injuries from the Attack, including constant ringing in his ears diagnosed as tinnitus, and a back injury leading to joint degeneration. He also suffers from PTSD and associated symptoms including anxiety, fear of darkness, hypersensitivity to loud noises, and survivor's guilt. Mr. Gering was awarded an Air Force Achievement Medal with Valor for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Gering has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

34.    **Plaintiff Aubree Brooke Staricka,** formerly known as Whisper Breeze Staricka, is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Ms. Staricka,

age 20, was serving as an Airman, 33rd Fighter Wing, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Ms. Staricka was riding in a government vehicle with a fellow servicemember, approaching her dorm, when she saw a huge flash and heard a massive explosion, followed by an enormous mushroom cloud. She felt the powerful force of the blast wave. She hurried to her dorm in Building 104. Along the way, she saw complete destruction and mass chaos left by the bombing, including many seriously injured servicemembers, debris and shattered glass from blown-out doors and windows, and bloody foot and handprints everywhere. Ms. Staricka was overcome with fear and grief having realized she was moments away from being inside that building herself. Ms. Staricka remained in a state of depression and shock and cried continuously for days as she learned the names of the fatalities, including several close friends and her boyfriend. After a grueling and depressing few days, she was assigned a flight home. For most of the flight, she remained covered in blankets and crying. Following the Attack, Ms. Staricka suffered extreme and constant anxiety, uncontrollable worry, and paranoia. Ms. Staricka also suffers from relentless survivor's guilt, extreme sleep issues and insomnia, depression, and PTSD. Ms. Staricka received medical treatment for these injuries after the Attack and continues to receive treatment. As a result of the Attack, and the injuries she suffered, Ms. Staricka has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

35.     **Plaintiff Brent Alan Mullings** is a United States citizen and is domiciled in the State of Washington. On June 25, 1996, Mr. Mullings, age 21, was serving as an Airman, 1st Class, Security Police, 4404th Security Police Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Mullings

was working at a security post in the Complex. He saw a bright flash, heard the explosion, and felt the blast wave of the powerful attack. His fear and apprehension intensified as he heard the frantic scene being played over his radio and it seemed the complex was under massive attack from multiple offenses. As part of his security assignment, Mr. Mullings remained at his post until the next day, during which time he lived in a constant state of high alert and anxiety, prepared to defend against additional attacks. Upon return to his suite in Building 129, he witnessed the destruction caused by the Attack, including blown-out windows, broken glass, and blood. On the couch in the dayroom, he saw the gruesome remnants of a soldier who suffered what appeared to be a grotesque head injury from the explosion. Bloody foot and handprints streaked the hallways of the building. This caused Mr. Mullings great distress and trauma as he realized that he could have been killed if he was in his room. For several nights after the Attack, Mr. Mullings worked foot patrol around the bomb site where he was met with constant visuals of death and carnage, and the sickening smell of burnt and rotting flesh. Mr. Mullings continues to suffer from permanent injuries from the Attack, including PTSD with major depressive disorder, nightmares, flashbacks, anxiety, depression, short-term memory loss, hyper-vigilance, and other associated symptoms for which he received medical treatment. Mr. Mullings was awarded an Air Force Outstanding Unit Award with Valor for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Mullings has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

36.     **Plaintiff Tina Marie Mullings** is a United States citizen and is domiciled in the State of Washington. She is the wife of Brent Alan Mullings.

37.     **Plaintiff Gloria Ann Mullings** is a United States citizen and is domiciled in the State of Washington. She is the mother of Brent Alan Mullings.

38.     **Plaintiff Vernon Oscar Mullings** is a United States citizen and is domiciled in the State of Washington. He is the father of Brent Alan Mullings.

39.     **Plaintiff Heather Maureen Hector** is a United States citizen and is domiciled in the State of Washington. She is the sister of Brent Alan Mullings.

40.     As a result of the June 25, 1996, Attack and Mr. Mulling's injuries, family members Tina Marie Mullings, Gloria Ann Mullings, Vernon Oscar Mullings, and Heather Maureen Hector suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Mullings continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

41.     **Plaintiff Sy William Yost** is a United States citizen and is domiciled in the State of Ohio. On June 25, 1996, Mr. Yost, age 26, was serving as a Major, Section Chief of the HEMA Systems Division, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Yost was in the barracks common room on the sixth floor of Building 133 talking with colleagues. He felt the building shake and the force of the blast surge through the building. Then he blacked out. When he awoke, he discovered that he had been blown out of the chair in which he had been sitting. When he gathered himself up, he dug his way down the stairs and out of the building, along the way helping move others who had been trapped under the rubble and carrying injured from the building. Although bleeding from his own glass and shrapnel wounds, Mr. Yost assisted in the search for survivors within Building 133. During the rescue efforts, he provided aid and buddy care, resulting in Mr. Yost being directly

responsible for saving the lives of six servicemembers. Despite Mr. Yost's valiant efforts, a close acquaintance died in Mr. Yost's arms. As a result of the Attack, Mr. Yost suffered glass and shrapnel wounds to his face, head, and arm, as well as contusions throughout his body. Mr. Yost also suffers from permanent injuries from the Attack, including constant ringing in his ears diagnosed as tinnitus, and PTSD and related symptoms including nightmares and hyperventilation. Mr. Yost was awarded a Purple Heart and Air Force Commendation Medal with Valor for his injuries and actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Yost has past and future noneconomic damages, including severe physical and mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

42.     **Plaintiff Maria Star Yost** is a United States citizen and is domiciled in the State of Ohio. She is the wife of Sy William Yost.

43.     As a result of the June 25, 1996, Attack and Mr. Yost's injuries, family member Maria Star Yost suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Yost continue to have a lasting effect on his wife and have taken a significant toll on their relationship.

44.     **Clayton Omar Zook** is a United States citizen and is domiciled in the State of Michigan. On June 25, 1996, Mr. Zook, age 22, was serving in the United States Air Force in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  Mr. Zook was sitting on a couch in the Day Room in Building 110 when the bomb exploded. He was approximately 200 yards from the center of the explosion. As a result of the Attack, Mr.  Zook suffered a Superior Labrum from Anterior to Posterior (SLAP) tear in his left shoulder, TMJ, constant ringing in his ears diagnosed as tinnitus, PTSD, depression, anxiety, recurrent intrusive thoughts, and stress-

related gastrointestinal disorders for which he has received extensive medical treatment. He continues to suffer from and be treated for these injuries. On July 2, 2020, this Court entered final judgment on liability and damages in favor of injured victim, Clayton Omar Zook, for the June 25, 1996, Khobar Towers Attack.

45.     **Plaintiff Serena Elizabeth Douglass** is a United States citizen and is domiciled in the State of Colorado. She is the stepsister of Clayton Omar Zook.

46.     **Plaintiff Sarah Grace Douglass** is a United States citizen and is domiciled in the State of Colorado. She is the stepsister of Clayton Omar Zook.

47.     **Plaintiff Steven Millard Douglass** is a United States citizen and is domiciled in the State of Colorado. He is the stepfather of Clayton Omar Zook.

48.     As a result of the June 25, 1996, Attack and Mr. Zook's injuries, family members Serena Elizabeth Douglass, Sarah Grace Douglass, and Steven Millard Douglass suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Zook continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

49.     **Plaintiff Joey Laurier Morrissette** is a United States citizen and is domiciled in the State of Maine. On June 25, 1996, Mr. Morrissette, age 19, was serving as an Airman 1st Class, Electronic Warfare Systems Apprentice for the 4404th Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Morrissette was located on the fifth floor of Building 128. He was laying in his bed, starting to fall asleep. He heard a rumble, then a loud explosion, and felt a shockwave of pressure from the blast. He abruptly awoke and jumped out of his bed, narrowly avoiding being hit by a door that

had been blown off its hinges. Mr. Morrissette followed others as they ran down the blood-covered stairwell to escape the building. He saw his suitemates with serious head wounds and others with gruesome injuries. As he ran down the stairwell without shoes or socks, glass and debris shards sliced his feet, causing serious injury and bleeding. Despite his own injuries, Mr. Morrissette helped carry out of the building severely wounded servicemembers, including transporting an Airman on a make-shift gurney made from a door. At the triage center, Mr. Morrissette was trampled by people rushing in to seek safety from what they thought was another attack on the Complex. Eventually, due to the wounds on his feet and bruises he sustained, Mr. Morrissette had to be carried to safety by a fellow Airman. During the days following the bombing, Mr. Morrissette was tasked with cleaning up glass and debris, wiping down the bloodstains in his building, and assisting to load the injured onto planes heading to Germany for medical treatment. The scenes and visuals Mr. Morrissette experienced during the chaos that ensured following the Attack, and the devastation he witnessed days after, caused him severe emotional distress and continues to haunt him today. Mr. Morrissette suffered significant permanent injuries from the Attack including severe cuts to his feet, which resulted in painful and devastating scarring, and severe trauma. He also suffers from debilitating PTSD and associated symptoms including chronic sleep impairment, reoccurring panic attacks, and severe depression. Mr. Morrissette was awarded a Certificate of Appreciation and an Air Force Achievement Medal for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Morrissette has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

50.     **Plaintiff Diane Theresa Morrissette** is a United States citizen and is domiciled in the State of Maine. She is the mother of Joey Laurier Morrissette.

51.     **Plaintiff Natasha Kami Morrissette** is a United States citizen and is domiciled in the State of Maine. She is the sister of Joey Laurier Morrissette.

52.     **Plaintiff Jerimiah Joe Morrissette** is a United States citizen and is domiciled in the State of Maine. He is the brother of Joey Laurier Morrissette.

53.     As a result of the June 25, 1996, Attack and Mr. Morrissette's injuries, family members Diane Theresa Morrissette, Natasha Kami Morrissette, and Jerimiah Joe Morrissette suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Morrissette continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

54.     **Plaintiff Nathan Elliott Wheat** is a United States citizen and is domiciled in the State of Minnesota. On June 25, 1996, Nathan Elliott Wheat, age 20, was serving as an Airman First Class, Security Forces, 4404th Security Police Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Wheat was sitting on a couch watching television on the ground floor of Building 129. The force of the blast wave launched him into the air and crashed him down onto the couch. Immediately after, he was knocked to the floor by a coffee table that had been blown across the room, causing a back injury. The sliding glass door shattered and shards of glass penetrated his left arm and his head. To escape the decimated building, he jumped off a ground-floor balcony and upon landing he instantly felt severe pain in his knee. At the direction of his supervisor, Mr. Wheat began to assist in the search and rescue efforts in Building 131 where, among many of the gruesome sights, he found a man whose legs had been blown off and suffered serious intestinal injuries. Despite his own injuries, Mr. Wheat held the man's intestines in his hands as he carried him to medics. Mr. Wheat continued in the rescue efforts by carrying other seriously injured

persons to the triage center. When the severe pain in his back and legs overcame him, he was forced to stop assisting others and seek treatment for himself. Mr. Wheat suffered glass shrapnel injuries to his head and arm from the Attack, leaving him with permanent scars on his arm. He suffered an L4-L5 compression fracture requiring prolonged therapy and medication. Mr. Wheat also suffers from PTSD and related symptoms due to the Attack and all that he witnessed in the aftermath. Mr. Wheat was awarded a Purple Heart and a Certificate of Appreciation for his injuries and actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Wheat has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

55.     **Plaintiff Donald Allen Wheat** is a United States citizen and is domiciled in the State of Minnesota. He is the father of Nathan Elliott Wheat.

56.      As a result of the June 25, 1996, Attack and Mr. Wheat's injuries, family member Donald Allen Wheat suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Wheat continue to have a lasting effect on his father and have taken a significant toll on their relationship.

57.     **Plaintiff Vincent Gene Oliver** is a United States citizen and is domiciled in the State of Arkansas. On June 25, 1996, Mr. Oliver, age 32, was serving as a staff sergeant, Head of Marketing Services for the 4404th, Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Oliver was located on the third floor of Building 117, sitting on a couch in his suite watching television, beginning to fall asleep. The loud explosion shocked him awake. The windows in the suite shattered and shards of glass punctured his legs from the knees down. Due to his injuries, he had

to be carried out of the building by a fellow servicemember, and received medical treatment including removal of glass shards and sutures in both legs that resulted in permanent scarring. For days after the Attack, Mr. Oliver continued to experience pain throughout his body, was unable to walk, and had ringing in his ears and loss of hearing. Mr. Oliver also suffers from permanent injuries including constant ringing in his ears diagnosed as tinnitus, sleep issues, and ongoing symptoms of PTSD, including hyper-vigilance and mental unrest. Mr. Oliver was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Oliver has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

58.     **Plaintiff Tamara Lee Oliver** is a United States citizen and is domiciled in the State of Arkansas. She is the spouse of Vincent Gene Oliver.

59.     As a result of the June 25, 1996, Attack and Mr. Oliver's injuries, family member Tamara Lee Oliver suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Oliver continue to have a lasting effect on his wife and have taken a significant toll on their relationship.

60.     **Plaintiff Steven Lee Brodt** is a United States citizen and is domiciled in the State of Pennsylvania. On June 25, 1996, Mr. Brodt, age 38, was serving as a Senior Non-Commissioned Officer, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Brodt was watching television on the third floor of Building 107. There was a sudden explosion and the power went out. Glass shards from a window a few feet in front of him blew across the room, tearing into Mr. Brodt's body. He was barefoot and his right foot started to bleed profusely. He tried to escape the building as quickly as

possible but struggled due to the lacerations to his foot that were exacerbated as he hobbled over debris. Despite his own injury, Mr. Brodt assisted with the evacuation of servicemembers from the destroyed buildings until his pain forced him to stop. He self-treated his injuries in order to not detract medical resources from those persons he felt were more in need. The next day, Mr. Brodt assisted in the cleanup of the damaged buildings, which left him with vivid images of the horrors of the bombing. Mr. Brodt suffered glass shrapnel lacerations and scarring to his right foot, and psychological trauma. He continues to suffer from permanent psychological injuries. Mr. Brodt was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Brodt has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

61.     **Plaintiff Un Suk Brodt** is a naturalized United States citizen and is domiciled in the State of Pennsylvania. She is the spouse of Steven Lee Brodt.

62.     **Plaintiff Steven Han Brodt** is a United States citizen and is domiciled in the State of Maryland. He is the son of Steven Lee Brodt.

63.     **Plaintiff Samuel John Brodt** is a United States citizen and is domiciled in the State of Washington. He is the son of Steven Lee Brodt.

64.     As a result of the June 25, 1996, Attack and Mr. Brodt's injuries, family members Un Suk Brodt, Steven Han Brodt, and Samuel John Brodt suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Brodt continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

65.     **Plaintiff Estate of Lieutenant Colonel Steven Peter Goff, M.D.,** at the time of

his death, was a United States citizen and was domiciled in the State of Montana. On June 25,

1996, Lt. Co. Goff, M.D., age 38, was serving as a flight surgeon and a Captain with the 4404th

Air Force Medical Group, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed

at the Khobar Towers complex. At the time of the Attack, Lt. Co. Goff, M.D. was sitting in his

suite at Khobar Towers about 200 yards away from the blast. The force of the blast shattered the

glass windows and doors of the room. Glass shrapnel stabbed and sliced his hands, feet, legs,

shoulders, and a large shard of glass pierced deep into his chest. Lt. Co. Goff, M.D. nonetheless

jumped into action and began providing life-saving medical care to his fellow servicemembers.

For hours, he tirelessly helped treat over 200 patients. Although Lt. Co. Goff, M.D. was seriously

wounded, he refused to quit. He worked until he was pulled off a patient and was taken to the main

hospital for his own life-saving treatment. In the following days, he learned of his colleagues and

friends who died in the Attack. On July 3, 1996, Lt. Co. Goff, M.D. was awarded the Airman's

Medal - the highest honor given by the Air Force - and a Purple Heart for his extraordinary heroism

and injuries following the Attack. Lt. Co. Goff, M.D. suffered from extreme emotional distress

and symptoms of PTSD as a result of the Attack, that he was not able to overcome, despite

treatment. Unfortunately, Lt. Co. Goff, M.D. succumbed to his injuries from the Attack and took

his own life on September 4, 2006. The June 25, 1996, Attack on Khobar Towers was the direct

and proximate cause and/or a substantial contributing factor to his PTSD diagnosis, as well as to

his mental anguish and extreme emotional pain and suffering that resulted in his suicide. As a

result of the Attack and the injuries Lt. Co. Goff, M.D. suffered, the Estate of Lt. Co. Steven P.

Goff, M.D. has past and future noneconomic damages, including severe mental pain and suffering

and loss of enjoyment of life, and past and future economic damages, including medical expenses,

lost income, and loss of earning capacity. In addition to a survival claim, the Estate brings a claim for wrongful death on behalf of Lt. Co. Steven Peter Goff, M.D.'s beneficiaries.

66.     **Plaintiff Shirley Ann Goff** is a United States citizen and is domiciled in the State of Wisconsin. She is the mother of Lt. Co. Steven Peter Goff, M.D. She brings this action individually, and as the personal representative of the Estate of Lt. Co. Steven Peter Goff, M.D., and all heirs.

67.     **Plaintiff Antoinette Marie Hovel** is a United States citizen and is domiciled in the State of Wisconsin. She is the sister of Lt. Co. Steven Peter Goff, M.D.

68.     **Plaintiff Kathryn Mary Ableidinger** is a United States citizen and is domiciled in the State of Wisconsin. She is the sister of Lt. Co. Steven Peter Goff, M.D.

69.     As a result of the June 25, 1996, Attack and Lt. Co. Goff, M.D.'s injuries, survival, and wrongful death, family members Shirley Ann Goff, Antoinette Marie Hovel, and Kathryn Mary Ableidinger suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Lt. Co. Goff, M.D., and the subsequent loss of his life, continue to have a lasting effect on his family members.

70.     **Plaintiff James Michael Silvi** is a United States citizen and is domiciled in the State of Arkansas. On June 25, 1996, Mr. Silvi, age 40, was serving as a First Sergeant, 4410 Airlift Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Silvi was reading on a couch in Building 103. He suddenly saw a flash of light and heard an ear-piercing boom. He felt the huge shock wave from the blast and the sliding glass doors and other objects exploded into the room, shattering glass on top of him. Mr. Silvi was blown off the couch and slammed into a concrete wall across the

room. Flying shrapnel and shards of glass lacerated his head and body. He had a throbbing headache and pain radiated throughout his body. Mr. Silvi climbed over furniture and debris to escape the building. In doing so, he stepped on shards of glass, which shredded the bottom of his feet. Once outside, Mr. Silvi started to direct those evacuated to a designated safe collection area but due to his injuries, was eventually carried to triage where he laid helplessly awaiting treatment. While at the triage center, he was surrounded by countless gruesomely wounded and seemingly lifeless servicemembers and was nearly crushed by a stampede when there was a false alarm that the complex was under attack again. Eventually, Mr. Silvi received treatment for his wounds, including stitches to the lacerations and flushing of dust and shrapnel from his eyes. He was devastated to learn that everyone from his unit suffered injuries in the Attack. Mr. Silvi suffered glass shrapnel injuries to his head and his right foot as well as loss of hearing from the Attack. Mr. Silvi also suffers from residual scarring on his head, permanent nerve damage, plantar fasciitis in his right foot, constant ringing in his ears diagnosed as tinnitus, and PTSD with heightened sense triggers that aggravate his symptoms. Mr. Silvi was awarded a Purple Heart, an Air Force Commendation Medal, and an Air Force Achievement Medal for his injuries and actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Silvi has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

71.    **Plaintiff Jo Ann Silvi** is a United States citizen and is domiciled in the State of Arkansas. She is the spouse of James Michael Silvi.

72.    **Plaintiff Angela Christine Silvi** is a United States citizen and is domiciled in the State of Arkansas. She is the daughter of James Michael Silvi.

29

73.     **Plaintiff Alison Elizabeth Silvi** is a United States citizen and is domiciled in the State of Arkansas. She is the daughter of James Michael Silvi.

74.     As a result of the June 25, 1996, Attack and Mr. Silvi's injuries, family members Jo Ann Silvi, Angela Christine Silvi, and Alison Elizabeth Silvi suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Silvi continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

75.     **Plaintiff David Anthony Toole** is a United States citizen and is domiciled in the State of Indiana. On June 25, 1996, Mr. Toole, age 21, was serving as an Airman First Class, 58th Fighter Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Toole was in his room on the second floor of Building 127. With his back to a window, he suddenly heard a loud explosion. The powerful force of the blast threw him across the room. He suffered severe lacerations to his head and back as he crawled over glass and debris to escape his room. His shirt was covered in blood, his head ached, and his ears were ringing. Mr. Toole fled to the mess hall, which had become a makeshift triage center, where he witnessed horrific injuries, including a fellow Airman whose legs were pulverized. When he learned about the death of several of his friends from the Attack, he was devastated. Shortly thereafter, Mr. Toole experienced his first of many panic attacks. Mr. Toole suffers from permanent injuries from the Attack including scarring from shrapnel wounds, residual pain in his right knee, severe migraines, hearing loss, constant ringing in his ears diagnosed as tinnitus, and PTSD and associated symptoms including panic attacks, memory loss, and sleep impairment. Mr. Toole was awarded a Purple Heart for his injuries following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Toole has past and future noneconomic

damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

76.     **Plaintiff Michele Ann Canchola** is a United States citizen and is domiciled in the State of South Carolina. She is the stepmother of David Anthony Toole.

77.     **Plaintiff Timothy Louis Canchola** is a United States citizen and is domiciled in the State of South Carolina. He is the stepfather of David Anthony Toole.

78.     As a result of the June 25, 1996, Attack and Mr. Toole's injuries, family members Michele Ann Canchola and Timothy Louis Canchola suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Toole continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

79.     **Plaintiff Franko James Ferguson** is a United States citizen and is domiciled in the State of Nevada. On June 25, 1996, Mr. Ferguson, age 24, was serving as Staff Sergeant, 4404 Provisional Maintenance Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Ferguson was sleeping in his room in Building 128. He suddenly felt the massive shock wave from the blast and a window above his bed shattered on top of him. He began bleeding from lacerations to his knee sustained by the glass shards. His ears were ringing, and his hearing was muffled. He tried to escape his room, but the glass on the floor shredded his bare feet. After searching and eventually finding shoes, Mr. Ferguson scrambled out of the building in search of help. On his way to the triage center, Mr. Ferguson came across a friend who was injured. Despite his own injuries, Mr. Ferguson carried the man on his shoulders to safety. As he approached the triage area, Mr. Ferguson saw

people running frantically and heard yelling that the attackers were coming through the wire; he looked around for anything to use as a weapon and feared that he was going to die. Mr. Ferguson suffered permanent injuries from the Attack, including glass shrapnel wounds to both feet and his left knee, which left scarring, and PTSD and related symptoms including depression, anxiety, and sleep impairment. As a result of the Attack, and the injuries he suffered, Mr. Ferguson has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

80.     **Timothy Michael Schomaker** is a United States citizen and is domiciled in the State of Arizona. On June 25, 1996, Mr. Schomaker, age 21, was serving in the United States Air Force, 4404th Communications Squadron, 4404th Support Group, 4404th Wing Provisional, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. Mr. Schomaker was in his room on the seventh floor of Building 103 when the bomb exploded. Mr. Schomaker was physically injured in the Attack and suffers from anxiety, depression, hypervigilance, survivor's guilt, PTSD, constant ringing in his ears diagnosed as tinnitus, and hearing loss, resulting from the bombing.

81.      On July 2, 2020, this Court entered final judgment on liability and damages in favor of injured victim, Timothy Michael Schomaker, for the June 25, 1996, Khobar Towers Attack.

82.     **Plaintiff Christina Marie Schomaker** is a United States citizen and is domiciled in the State of Arizona. She is the spouse of Timothy Michael Schomaker.

83.     **Plaintiff Paula Gail Nott** is a United States citizen and is domiciled in the State of Arizona. She is the mother of Timothy Michael Schomaker.

84.     **Plaintiff Preston Wade Nott** is a United States citizen and is domiciled in the State of Arizona. He is the stepfather of Timothy Michael Schomaker.

85.      **Plaintiff Kristine Lynnette Schomaker** is a United States citizen and is domiciled in the State of California. She is the sister of Timothy Michael Schomaker.

86.     **Plaintiff Tanya Lea Nott** is a United States citizen and is domiciled in the State of Oklahoma. She is the stepsister of Timothy Michael Schomaker.

87.     **Plaintiff Rebecca Lamae Thurman** is a United States citizen and is domiciled in the State of Oklahoma. She is the stepsister of Timothy Michael Schomaker.

88.     As a result of the June 25, 1996, Attack and Mr. Schomaker's injuries, family members Christina Marie Schomaker, Paula Gail Nott, Preston Wade Nott, Kristine Lynnette Schomaker, Tanya Lea Nott, and Rebecca Lamae Thurman suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Schomaker continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

89.     **Plaintiff Michael Harrington Weems** is a United States citizen and is domiciled in the State of Florida. On June 25, 1996, Mr. Weems, age 30, was serving as Captain of the Aeromedical Evacuation Flight Team with the 4410th Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Weems was in Building 101. Mr. Weems suddenly heard a loud boom and felt the building shake. A piece of plywood that had covered a broken glass door blew across the room and hit Mr. Weems directly in the head. He lost consciousness for a few minutes and awoke to find his head bleeding from a deep laceration and ringing in his ears. Despite his injuries from the blast, Mr. Weems remained on command at the triage center for the next three days, stopping only

briefly to get his lacerations stitched. While overseeing the injured servicemembers, Mr. Weems witnessed many gruesome sights including traumatic amputations, life-saving surgeries, and fatal wounds of his colleagues. He was tasked with encasing the deceased in body bags. Due to this experience, Mr. Weems could not sleep for days following the Attack and was finally prescribed a sleeping aid. Mr. Weems suffered a head injury which resulted in a concussion and a traumatic brain injury, glass shrapnel wounds that resulted in scarring above his eye which required surgical repair, wounds to his feet, and constant ringing in his ears diagnosed as tinnitus. He also suffers from PTSD, chronic refractory headaches with migraines, and post-concussion syndrome. Mr. Weems was awarded a Purple Heart and an Air Force Commendation Medal with Valor for his injuries and actions following the Attack. As a result of the attack, and the injuries he suffered, Mr. Weems has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

90.     **Plaintiff Nancy Pearl Robertson Weems** is a United States citizen and is domiciled in the State of Mississippi. She is the mother of Michael Harrington Weems.

91.     **Plaintiff John Harold Weems** is a United States citizen and is domiciled in the State of Mississippi. He is the father of Michael Harrington Weems.

92.     **Plaintiff Richard Lawrence Weems** is a United States citizen and is domiciled in the State of Tennessee. He is the brother of Michael Harrington Weems.

93.     As a result of the June 25, 1996, Attack and Mr. Weems' injuries, family members Nancy Pearl Robertson Weems, John Harold Weems, and Richard Lawrence Weems suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services,

and economic loss. The injuries suffered by Mr. Weems continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

94.    **Plaintiff Brian Christopher Stoneburner** is a United States citizen and is domiciled in the State of Maryland. On June 25, 1996, Brian Christopher Stoneburner, age 24, was serving as a Senior Airman with the 4404th Civil Engineering Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Stoneburner was in his room, located in Building 133, on the fourth floor. He was just settling into bed. He contemplated getting up to get a bottle of water but decided against it. Suddenly he felt a giant vacuum sensation, then a gut-wrenching explosion that shook everything. He lost consciousness for a few minutes and awoke with a painful headache and ringing in his ears. When Mr. Stoneburner scanned the room, he realized that if he had gone for that drink of water, he would have been standing right where a metal slat impaled a wall locker. He and his roommate had to breakdown the door to exit the room. Once outside his room, he was exposed to dust and putrid odors that filled the air, and there was glass, debris, and blood everywhere. Mr. Stoneburner came upon a severely wounded colleague who he helped evacuate by wrapping him in a blanket and placing him on a door as a makeshift gurney. As he exited his building, he heard that people were trapped in an elevator in a different building. He immediately ran to help them. After prying the doors open and administering first aid, he went to the mess hall where he received instructions to guard an underground garage. While clearing debris there, his hands were burned. The underground garage, where he had been working just a few hours before the Attack, had been destroyed. Mr. Stoneburner was ordered to stay at Khobar Towers for 47 days after the Attack. For 21 of those days, he was on the night shift in the garage, which made him feel like he was repeatedly reliving the night of the Attack, causing him great psychological distress. Due to the

Attack, Mr. Stoneburner suffered glass shrapnel wounds and burns to his hands which resulted in scarring and ringing in his ears later diagnosed as tinnitus. He also suffers from PTSD and related symptoms including self-isolation, anger issues, hyper-vigilance, and sleeping issues. Mr. Stoneburner was awarded a Purple Heart and an Air Force Commendation Medal with Valor for his injuries and actions following the Attack. As a result of the attack, and the injuries he suffered, Mr. Stoneburner has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

95.   **Plaintiff Scott Patrick Hill** is a United States citizen and is domiciled in the State of Oregon. On June 25, 1996, Scott Patrick Hill, age 23, was serving as a Senior Airman with the 1st Component Repair Squadron in Support of Operation Southern Watch 4404th Maintenance Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Hill was in Building 128, about to fall asleep in his bed. Suddenly, a huge explosion woke him up. When the echoing of the blast turned into silence, Mr. Hill sprang to his feet. He noticed his suitemates were covered in glass. Debris, shattered glass, and dust covered the room. He hurried to put shoes on, but all he could grab were sandals. Although his ears were ringing, he heard someone yell to him to evacuate. Mr. Hill scrambled over the shattered glass and overturned furniture that obstructed his exit from the building. Dust filled his eyes and mouth making it hard to breathe and see. He assisted severely injured servicemembers evacuate the building. In doing so, he sustained lacerations to his feet from the shattered glass and debris that covered the ground. Amidst the chaos following the Attack, Mr. Hill witnessed many of his fellow servicemembers with devastating injuries and he tried to administer any help he could. During the first night after the Attack, there were additional bomb

threats and sightings of locals scaling the fences into the Khobar complex, which caused him tremendous anxiety and stress, as he feared for his life and believed that he would never see his wife and son again. Over the next few days, Mr. Hill assisted in the clean-up and investigation of the bombed building, Building 131. He also assisted in carrying the severely injured from triage to the aircraft to be medevacked to Germany. He will never forget the memories of this gruesome task. Due to the Attack, Mr. Hill suffered lacerations to his feet and constant ringing in his ears diagnosed as tinnitus. He also suffers from PTSD and associated symptoms including anxiety, depression, sleep apnea. Mr. Hill was awarded an Air Force Achievement Medal First Oak Leaf Cluster and the Southwest Asia Service Medal for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Hill has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

96.    **Plaintiff Kimberlee Jo Hill** is a United States citizen and is domiciled in the State of Oregon. She is the spouse of Scott Patrick Hill.

97.    As a result of the June 25, 1996, Attack and Mr. Hill's injuries, family member Kimberlee Jo Hill suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Hill continue to have a lasting effect on his wife and have taken a significant toll on their relationship.

98.    **Plaintiff Christopher Brian Lauderback** is a United States citizen and is domiciled in the State of Oklahoma. On June 25, 1996, Christopher Brian Lauderback, age 21, was serving as an Airman First Class with the 4404th Supply Squadron, United States Air Force, stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex. At the time of the Attack, Mr. Lauderback was on the fourth floor of Building 121, laying on a couch in a common

room, watching TV. Suddenly, the building shook. He ran into the hallway thinking it was an earthquake, but then the sliding glass balcony window blew in, spraying him with shards of glass. The force of the blast threw him across the room into a wall, severely injuring his shoulder and back. When he gathered himself, he scanned the room and saw glass and furniture everywhere. His ears were ringing, and dust filled his eyes and mouth. Although barefoot, he ran through broken glass to escape the building. He had to push furniture out of his way, which exacerbated his back and shoulder pain. The scenes Mr. Lauderback witnessed on his way to the makeshift triage center remain forever etched in his memory. He saw the floors and sidewalks of the Complex covered in pools of blood, and at the triage center, Mr. Lauderback witnessed a man holding his own eyeball. Once at triage, Mr. Lauderback removed the glass shards that were embedded in his feet and provided assistance and buddy care to the myriads of awaiting injured. Due to the Attack, Mr. Lauderback suffered glass shrapnel wounds to his feet that resulted in scarring, a neck injury, and a shoulder injury that required surgery. He also suffers from constant ringing in his ears diagnosed as tinnitus, migraines, chronic bicep tendonitis, spinal stenosis, and PTSD and associated symptoms including sleep apnea and hypertension. Mr. Lauderback was awarded an Air Force Achievement Medal with Valor for his actions following the Attack. As a result of the Attack, and the injuries he suffered, Mr. Lauderback has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

99.    **Christopher Pius Nagle** is a United States citizen and is domiciled in the State of California.   On June 25, 1996, Christopher Pius Nagle, age 30, was serving in the 4404th Maintenance Squadron, 4404th Wing Provisional, United States Air Force and stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  Mr. Nagle was in his room

on the fifth floor of a building approximately 120 yards from Building 131, where the explosion occurred. Mr. Nagle suffered severe PTSD, depression, anxiety, severe headaches, severe tinnitus, hearing loss, severe bruising, shoulder and neck injuries, as well as shrapnel injuries. On July 2, 2020, this Court entered final judgment on liability and damages in favor of injured victim, Christopher Pius Nagle, for the June 25, 1996, Khobar Towers Attack.

100.    **Plaintiff Jacqueline Archuleta Quintana** is a United States citizen and is domiciled in the State of Colorado. She is the former spouse of Christopher Pius Nagel.

101.    As a result of the June 25, 1996, Attack and Mr. Nagel's injuries, family member, Jacqueline Archuleta Quintana, suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. Nagel continue to have a lasting effect on his former spouse and have taken a significant toll on their relationship.

102.    **Bryant Keith White** is a United States citizen domiciled in the State of Oregon. On June 25, 1996, Bryant Keith White, age 24, was serving in the 4404th Civil Engineer Squadron, 4404th Support Group, 4404th Wing Provisional, United States Air Force and stationed in Dhahran, Saudi Arabia, and housed at the Khobar Towers complex.  Mr. White was in his room, lying on his bed, on the fifth floor of Building 133 immediately adjacent to the blast, when the bomb detonated. As a result of the attack, Bryant Keith White suffered a concussion, deep laceration to his head, metal shrapnel embedded in his forehead, shrapnel wounds to his back, feet, and arms, severely painful injuries to his neck and back, whiplash, muscle spasms, PTSD, severe headaches, tinnitus, hearing loss, and bruising. On July 2, 2020, this Court entered final judgment on liability and damages in favor of injured victim, Bryant Keith White, for the June 25, 1996, Khobar Towers Attack.

103.    **Plaintiff Susan Lynn White** is a United States citizen and is domiciled in the State of Oregon. She is the mother of Bryant Keith White.

104.    **Plaintiff Jerry White** is a United States citizen and is domiciled in the State of Oregon. He is the father of Bryant Keith White.

105.    As a result of the June 25, 1996, Attack and Mr. White's injuries, family members Susan Lynn White and Jerry White suffered severe mental anguish, extreme emotional pain and suffering, loss of solatium, loss of services, and economic loss. The injuries suffered by Mr. White continue to have a lasting effect on his family members and have taken a significant toll on their relationships.

106.    **Plaintiff James Allen Bratton** is a United States citizen domiciled in the State of Texas. On June 25, 1996, Mr. Bratton, age 22, was serving as an E4 Senior Airman, United States Air Force, stationed in Dhahran, Saudi Arabia and housed at the Khobar Towers complex. Mr. Bratton was sleeping in his room in Building 130 at the time of the Attack. He was awakened by a flash of light and a tremor from the explosion that blew him out of his bed. He landed face down on the floor with glass from the shattered windows piercing his mostly bare body and he began bleeding from the lacerations. He sustained a significant laceration to his right finger, cutting his tendon. Mr. Bratton grabbed a pair of shoes and ran out of the building. His ears were ringing, and his mouth grew dry from breathing in the dust that filled the air. Despite his injuries, Mr. Bratton proceeded to the armory with others, and he grabbed a firearm to prepare for a potential battle. He wrapped his bloodied finger in gauze and hurried to the bomb site where he assisted in the evacuation of survivors and brought the injured to aid stations. After all survivors had been evacuated, he searched for deceased victims. He painstakingly transported 11 of his deceased fellow servicemembers to the aircraft pallets. As a result of the Attack, Mr. Bratton suffered

significant permanent injuries including deformation and scarring of his pinky finger, and stress-related physical and psychological conditions. Mr. Bratton was awarded an Air Force Commendation Medal for his injuries and actions following the Attack. As a result of the Attack and the injuries he suffered, Mr. Bratton has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

107.    **Plaintiff Kenneth Michael Kowalczyk** is a United States citizen domiciled in the State of Utah. On June 25, 1996, Mr. Kowalczyk, age 24, was serving as an Aircraft Weapons Systems Specialist, E-4 Senior Airman, 34th Fighter Squadron, 388th Fighter Wing, United States Air Force, stationed in Dhahran, Saudi Arabia and housed at the Khobar Towers complex. At the time of the Attack, Mr. Kowalczyk was watching television on the couch of the common room in Building 124. He was dressed only in his boxer shorts and facing a glass window, which was behind the television set. Suddenly, a tremendous blast blew out the window and projected Mr. Kowalczyk into a concrete wall several feet behind where he had been sitting. His head slammed against the wall, and he was knocked out and dazed. He regained consciousness only by his supervisor frantically shaking him. Due to the glass shards from the shattered windows, Mr. Kowalczyk sustained numerous lacerations throughout his body. He had a deep laceration on his left thumb, his left pinky finger was partially severed and dangling from his hand by only a piece of skin, and he was profusely bleeding from the lacerations on his legs and upper torso. In addition to the glass wounds, Mr. Kowalczyk also began to experience fluid pouring out of both ears - which continued for weeks, muffled hearing, and a severe headache. He grabbed a towel from the bathroom to wrap around his hand and threw on his boots to begin his escape from the building. Despite his injuries, Mr. Kowalczyk, fueled by adrenaline, aided his injured battle buddies before

ultimately seeking treatment for himself. As a result of the Attack, Mr. Kowalczyk suffered significant permanent injuries, including scars throughout his body from the lacerations, nerve damage from the laceration to his left thumb, a partially severed pinky finger on his left hand which required the ligaments and tendons to be reattached, ringing in his ears and hearing loss, post-traumatic stress disorder, and other related psychological issues. Mr. Kowalczyk was awarded a Purple Heart and the Airman's Medal for Heroism for his injuries and actions following the Attack. As a result of the Attack and the injuries he suffered, Mr. Kowalczyk has past and future noneconomic damages, including severe mental pain and suffering and loss of enjoyment of life, and past and future economic damages, including medical expenses, lost income, and loss of earning capacity.

108.    **Plaintiff Patricia Mary Kowalczyk** is a United States citizen domiciled in the State of Montana. She is the mother of Kenneth Michael Kowalczyk.

109.    **Plaintiff Kenneth Dale Kowalczyk** is a United States citizen domiciled in the State of Montana. She is the father of Kenneth Michael Kowalczyk.

110.    **Plaintiff Aaron Charles Kowalczyk** is a United States citizen domiciled in the State of Idaho. He is the brother of Kenneth Michael Kowalczyk.

### B.  Defendants

111.    Defendant The Islamic Republic of Iran has been designated a state sponsor of terrorism pursuant to Section 6(j) of the Export Administration Act of 1979, (50 U.S.C. § 2405(j)) continuously since January 19, 1984.

112.    The Government of Iran is politically and ideologically hostile to the United States and its allies. It has consistently provided material support for acts of international terrorism, including extrajudicial killings, torture, and hostage takings, particularly through the MOIS, IRGC,

and its Lebanese-based Hezbollah, which historically have served as Iran's proxies and agents. In doing so, these organizations have enabled Iran to project extremist violence and terror throughout the Middle East and around the globe.

113.    More specifically, Iran provides sponsorship, material support and resources to Hezbollah, a known terrorist organization, by providing it with funding, weapons, direction, and training to carry out terror attacks consisting of extrajudicial killings, torture, and hostage taking as those terms are defined in the FSIA, 28 U.S.C. § 1605A(a)(1).

114.    The formation and emergence of Hezbollah as a major terrorist organization is largely due to the government of Iran. The MOIS and the IRGC have been the primary instruments used by Iran to provide Hezbollah with funding, training, weapons, and other essential material support.

115.    The significant support provided by Iran enables Hezbollah to be a terror organization capable of recruiting terrorists and carrying out large-scale terrorist attacks, like the attack on the Khobar Towers Complex.

116.    The Islamic Republic of Iran has been found to be liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605A (and its predecessor 28 U.S.C. § 1605(a)(7)) to victims of state-sponsored terrorism for the acts and actions of Hezbollah in cases before this Court, including, *Anderson v. The Islamic Republic of Iran,* 90 F. Supp. 2d 107 (D.D.C. 2000) and *Cicippio v. Islamic Republic of Iran*, 18 F. Supp. 2d 62 (D.D.C. 1998).

117.    The Islamic Republic of Iran has also been found liable by this court for the June 25, 1996, Attack on the Khobar Towers, which is the subject of this Complaint. See, *Rimkus v. Islamic Republic of Iran,* 575 F. Supp. 2d 181 (D.D.C. 2008); *Blais v. Islamic Republic of Iran, et*

*al.*, 459 F. Supp. 2d 40 (D.D.C. 2006); *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

118.    Describing the role Iran and its agents played in the attack on Khobar Towers, the court in *Rimku*s stated as follows:

> "The totality of the evidence at trial, combined with the findings and conclusions entered by this court in *Blais* and *Heiser*, firmly establishes that the Khobar Towers bombing was planned, funded, and sponsored by senior leadership in the government of the Islamic Republic of Iran, the IRGC had the responsibility and worked with Saudi Hezbollah to execute the plan, and the MOIS participated in the planning and funding of the attack." *Rimkus v. Islamic Republic of Iran, et al.,* 575 F. Supp. 2d 181 (D.D.C. August 26, 2008).

119.    The Islamic Republic of Iran is thus collaterally estopped from denying that it is liable for the acts and actions of its agent, Hezbollah in carrying out the terrorist attack at issue here.

120.    Defendant MOIS is the Iranian intelligence service and functions both within and beyond Iranian territory. It supports Iran's international terrorist activities by providing material support, including resources and intelligence, for the commission of acts of extrajudicial killing, torture, and hostage-taking. This Court has consistently found MOIS to be a political subdivision of Iran for purposes of liability and damages under the FSIA.[3]

121.    Here, MOIS, acting as an agent of Iran, performed acts that caused the terrorist bombing of Khobar Towers. The MOIS assisted Hezbollah's terrorist activities through the provision of material support and resources including intelligence, funds, training, and

---

[3] *See, e.g.*, *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 71-722 (D.D.C. 2010); *Bennett v. Islamic Republic of Iran*, 507 F. Supp.2d 117, 125 (D.D.C. 2007) ("Defendant MOIS is considered to be a division of state of Iran, and is treated as a member of the state of Iran itself."); *Salazar v. Islamic Republic of Iran*, 370 F.Supp.2d 105, 116 (D.D.C. 2005).

supplying weapons and direction to Hezbollah. MOIS performed these acts while acting within the scope of its agency for Iran, and specifically performed these acts in support of Hezbollah's bombing of the Khobar Towers on June 25, 2006.

122.    This Court has repeatedly held Defendants Iran and MOIS liable as state sponsors of Hezbollah's terrorist activities pursuant to 28 U.S.C. § 1605(a)(7), predecessor to § 1605A.[4]

123.    Defendant IRGC, also known as Pasdaran, is a military organization and a branch of the Islamic Republic of Iran.

124.    IRGC has been described as 'a nontraditional instrumentality of Iran' that acts as 'the military arm of a kind of shadow government answering directly to the Ayatollah and the mullahs who hold power in Iran.' *Rimkus v. Islamic Republic of Iran*, 575 F. Supp. 2d at 187 (citing to *Heiser,* 466 F. Supp. 2d at 251-52 and *Blais*, 459 F. Supp. 2d at 47).

125.    IRGC "constitute[s] [an] integral part[] of Iran's political structure, and thus, constitute[s] a foreign state for [FSIA] purposes." *Akins v. Islamic Republic of Iran*, 332 F. Supp. 3d 1 (D.D.C. 2018).

126.    Founded after the 1979 Islamic Revolution in Iran, IRGC has become a powerful military instrument for defending the Islamic fundamentalist revolution and the Islamic Republic of Iran and is dedicated to the export of Islamic Fundamentalism principles throughout the world through acts of terrorism.

---

[4] *See, e.g., Surette v. Islamic Republic of Iran,* 231 F. Supp. 2d 260, 267 (D.D.C. 2002); *Stethem v. Islamic Republic of Iran,* 201 F. Supp. 2d 78 (D.D.C. 2002); *Wagner v. Islamic Republic of Iran,* 172 F. Supp.2d 128 (D.D.C. 2001); *Jenco v. Islamic Republic of Iran*, 154 F.Supp.2d 27 (D.D.C. 2001); *Sutherland v. Islamic Republic of Iran*, 151 F. Supp.2d 27 (D.D.C. 2001); *Anderson v. Islamic Republic of Iran,* 90 F. Supp.2d 107 (D.D.C. 2000).

127.    IRGC is the agent through which Iran prepared and oversaw the actions relating to the bombing of the Khobar Towers in Dhahran, Saudi Arabia on June 25, 1996, IRGC, acting as an agent of the Islamic Republic of Iran, performed acts within the scope of its agency, within the meaning of 28 U.S.C. § 1605A, as a conduit for the Islamic Republic of Iran's provision of funds, training, and direction to Hezbollah for its terrorist activities that caused the injuries to Plaintiffs herein.

128.    IRGC has consistently been found liable as a foreign state supporting international terrorism under 28 U.S.C. § 1605(a)(7) for the acts and actions of Hezbollah in cases before this Court including, *Higgins v. The Islamic Republic of Iran*, Civ. No. 99-377(RCL) (D.D.C. 2000); *Surette v. Islamic Republic of Iran*, Case No. 01-570 (D.D.C. 2002); *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105 (D.D.C. 2005); *Levin v. Islamic Republic of Iran*, 529 F. Supp. 2d 1 (D.D.C. 2007).

129.    IRGC has been also found liable by this Court for overseeing the actions in the attack on the Khobar Towers as detailed in the factual allegations below. See, *Heiser v Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006); *Blais v. Islamic Republic of Iran,* 459 F. Supp. 2d 40 (D.D.C. 2006).

## III. FACTUAL ALLEGATIONS

130.    In the early 1980s, Iran developed a program of carefully planned terrorist attacks designed to destabilize Middle Eastern governments and spread fundamentalist Islamic principles. To achieve its goal, Iran, through MOIS and IRGC, established Hezbollah in Lebanon as its proxy terror organization to employ tactics such as kidnapping, torture, and murder. MOIS and IRGC provided funding, training, and equipment to Hezbollah enabling it to pursue and achieve its mission. By the early 1990s, the activities of Hezbollah were no longer limited to Lebanon. Its

operatives were operating in a number of countries utilizing the tactics taught to them in Iran and the Bekka Valley in Lebanon at facilities established, operated, and supported by the Defendants.

131.    In the early 1990s, the United States military developed a presence in Saudi Arabia. Iran viewed the presence of United States personnel, including members of the United States armed forces, as supportive of the corrupt Saudi monarchy, and its pro-Western regime, which opposed the Islamic Republic religious and political ideals and the establishment of an Islamic state in Saudi Arabia. Iran believed that a large-scale terrorist operation designed to kill Americans, which would lead to significant casualties, would weaken support in the U.S. and its allies for its presence in the region, or weaken support in the host nations for a continued U.S. presence.

132.    To that end, the Iranian government, acting through its agents MOIS and IRGC, and in concert with the Saudi-based Hezbollah terrorist organization, began preparations for the bombing of a target associated with American interests.[5]

133.    In 1995, Iran, through MOIS and the IRGC, prepared to execute an attack on an American target. Saudi Hezbollah operatives scouted potential American targets in Saudi Arabia, and explosives were smuggled into Saudi Arabia and hidden for later use. An elaborate professional intelligence network was established and tasked with carrying out the bombing.

134.    The attack itself was approved and supported by Ayatollah Khomeini, Iran's Supreme Leader at the time, and by Ali Fallaahian, the then-head of MOIS who provided

---

[5] Saudi Hezbollah members provided information about how each was recruited and trained by the Iranian government and stated that the selection of the target and the authorization to proceed was done collectively by Iran, MOIS, and IRGC, though the actual preparation and carrying out of the attack was done by the IRGC. (Dec. 18, 2003 Tr. at 25.) See *Heiser*, 466 F Supp.2d at 252-253.

intelligence security support for the operation and received direct support from his representative in Damascus, Syria.[6]

135.    Individuals were recruited principally by a senior official of the IRGC, Brigadier General Ahmed Sharifi. Sharifi, who was the operational commander, planned the operation and recruited individuals for the operation at the Iranian embassy in Damascus, Syria. [7]

136.    By June 1996, bomb components, including high explosives, incendiary materials, and sophisticated fuses and tools used in the bomb assembly, were stored in Saudi Arabia. Agents of Defendants Iran, MOIS, and the IRGC collectively selected and approved Khobar Towers as the target to be destroyed by Hezbollah.

137.    The Khobar Towers complex was a residential multi-story apartment building complex in Dhahran, Saudi Arabia that housed United States Air Force and other U.S. military and coalition forces personnel charged with monitoring compliance with U.N. security council resolutions. The deployment of U.S. troops to the region was considered a peacetime deployment with a friendly host country.[8]

138.    In the evening of June 25, 1996, shortly before 10:00 p.m. local time, two men drove a stolen Mercedes Benz gasoline tanker truck loaded with at least 5,000 pounds of plastic explosives into the Saudi compound that surrounded the American sector at the al-Khobar military area near Dhahran. The terrorists parked the truck next to the Khobar Towers complex, approximately 80 feet from a building that housed the American personnel.[9] The men drove away in a stolen getaway vehicle. A few minutes later, the 5,000-pound truck bomb was detonated. The

---

[6] *Blais*, 459 F Supp2d at 48; *Heiser*, 466 F. Supp.2d at 252.
[7] *Id.*
[8]  *Blais* 459 F Supp.2d at 47; *Heiser* 466 F. Supp.2d at 251.
[9] Referring to Building 131

resulting blast sheared off the entire face of the Khobar Towers complex and shattered windows in virtually every building in the compound and in surrounding buildings up to a mile away.

139.    The truck bomb used in the attack "was assembled at a terrorist base in the Bekka Valley which was jointly operated by the IRGC and by the terrorist organization known as Hezbollah."[10]

140.    Investigators determined that the force of the explosion was the equivalent of 20,000 pounds of TNT, which was, according to the Department of Defense, "the largest non-nuclear explosion ever up to that time."[11]

141.    The explosion killed dozens of persons including 19 American servicemembers and injured hundreds of others.  The blast was so powerful that it heavily damaged or destroyed six high-rise apartment buildings and shattered windows in virtually every other structure in the compound and was felt 20 miles from the blast site.[12]

142.    Each of the named Defendants collaborated, designed, directed, incited, financed, provided material support, aided, abetted, conspired, and executed acts of terror with Hezbollah. Without the direction and support from Iran, MOIS, and IRGC, Hezbollah would otherwise not have had the expertise and skills needed to carry out the attack on the Khobar Towers.

143.    As a result of the June 25, 1996, Attack, Plaintiffs Amb. Jonathan Scott Gration, Maj. Gen., USAF (Ret.), Barry Gordon Brown, Angela Mashel Brown, Steven Lee Byers, Timothy Gerard Fermanis, Kevin Richard Mall, John Charles Orlando, Jr., Kenneth David Weaver, Ronald Scott Gering, Aubree Brooke Staricka, Brent Alan Mullings, Sy William Yost, Joey Laurier

---

[10]  See, *Blais*, 459 F. Supp. 2d at 48.
[11]  *Id.*
[12]  House National Security Committee Press Release, Floyd D. Spence, Chairman; August 14, 1996.

Morrissette, Nathan Elliott Wheat, Vincent Gene Oliver, Steven Lee Brodt, Lt. Co. Steven Peter Goff, M.D. deceased, through his Estate, James Michael Silvi, David Anthony Toole, Franko James Ferguson, Michael Harrington Weems, Brian Christopher Stoneburner, Scott Patrick Hill, Christopher Brian Lauderback, Jason Allen Bratton, and Kenneth Michael Kowalczyk (collectively "Injured Servicemember Plaintiffs") suffered serious physical injury, extreme mental anguish, pain and suffering, and loss of enjoyment of life, which have resulted in past and future non-economic and economic damages, including medical expenses, lost income, and loss of earning capacity.

144.    As a result of the June 25, 1996, Attack, Plaintiffs Judith Ellen Gration, Jonathan Scott Gration, Jr., Eva Ranee Graham, Corey Thomas Brown, Alexis Nichole Wingate, Donna Lee Byers, Rodney Lee Byers, Joseph Eugene Byers, Ursula Leona Orlando, Jimmy Olen Weaver, Susan Pauline Pomoransky, Vickie Rena Anthony, Clinton Edward Weaver, Donald Lee Heikes, Roger Dayle Heikes, Tina Marie Mullings, Gloria Ann Mullings, Vernon Oscar Mullings, Heather Maureen Hector, Maria Star Yost, Serena Elizabeth Douglass, Sarah Grace Douglass, Steven Millard Douglass, Diane Theresa Morrissette, Natasha Kami Morrissette, Jerimiah Joe Morrissette, Donald Allen Wheat, Tamara Lee Oliver, Un Suk Brodt, Steven Han Brodt, Samuel John Brodt, Shirley Ann Goff, Antoinette Marie Hovel, Kathryn Mary Ableidinger, Jo Ann Silvi, Angela Christine Silvi, Alison Elizabeth Silvi, Michele Ann Canchola, Timothy Louis Canchola, Christina Marie Schomaker, Paula Gail Nott, Preston Wade Nott, Kristine Lynnette Schomaker, Tanya Lea Nott, Rebecca Lamae Thurman, Nancy Pearl Robertson Weems, John Harold Weems, Richard Lawrence Weems, Kimberlee Jo Hill, Jacqueline Archuleta Quintana, Susan Lynn White, Jerry White, Patricia Mary Kowalczyk, Kenneth Dale Kowalczyk, and Aaron Charles Kowalczyk (collectively "Immediate Family Member Plaintiffs") have suffered severe mental anguish,

extreme emotional distress, pain and suffering, loss of solatium, loss of consortium, loss of society/services/companionship and past and future economic damages.

145.    The Defendants' actions were a substantial factor in the sequence of events that led to the Plaintiffs' injuries and wrongful death. Such injuries were reasonably anticipated as a natural consequence of the Defendants' conduct.

146.    As such, Defendants are directly, jointly, and severally liable for the injuries suffered by Plaintiffs and should, therefore, be held accountable.

## IV. CLAIMS FOR RELIEF

### COUNT I

### ACTION FOR DAMAGES - GENERAL
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

147.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

148.    Defendant Iran is, and was at all times relevant, a State Sponsor of Terrorism within the meaning of § 1605A(h)(6).

149.    Defendants MOIS and IRGC are each political subdivisions of the State of Iran and as such are treated as the state of Iran for purposes of bringing suit under 28 U.S.C. §1603(a).

150.    Defendants Iran, MOIS, and IRGC provided substantial, material support and resources to its agent, Hezbollah, within the meaning of 28 U.S.C. Section 1605A, which facilitated and caused the terror attack on the Khobar Towers complex.

151.    Defendants funded, trained, directed, aided, abetted, conspired, and acted in concert with Hezbollah in sponsoring and carrying out the "extrajudicial killing" of American

servicemembers at the Khobar Towers complex and are therefore directly liable and vicariously responsible for Hezbollah's actions.

152.    The material support provided by Defendants for the act of extrajudicial killing resulted in 19 deaths and countless personal injuries of U.S. servicemembers, including Plaintiffs, who survived the attack.

153.    Plaintiffs herein are Injured Servicemember Plaintiffs and Immediate Family Member Plaintiffs who were injured as a result of the bombing of Khobar Towers. All Plaintiffs were nationals of the United States at the relevant time of the Attack, and thus, are entitled to bring claims under Section 1605A(c).

154.    The Plaintiffs suffered severe harm, including personal injury, emotional distress, mental anguish, pain and suffering, loss of companionship and society, loss of solatium and consortium, loss of services, and economic loss including medical expenses, lost income, and loss of earning capacity, as a direct and proximate cause of the actions of Defendants Iran, MOIS, and the IRGC acting through their agent Hezbollah.

155.    Defendants MOIS and IRGC, acting on their own as well as agents of the Islamic Republic of Iran, performed acts within the scope of their agency which also caused the injuries to Plaintiffs within the meaning of 28 U.S.C. § 1605A.

156.    The conduct of Iran, MOIS, and IRGC was criminal in nature, outrageous, extreme, wanton, willful, malicious, and constitutes a threat to the public warranting an award of punitive damages under 28 U.S.C. Section 1605A(c).

157.    Defendants Iran, MOIS, and IRGC are therefore liable for the full amount of Plaintiffs' economic damages, solatium, pain and suffering, and punitive damages under 28 U.S.C. 1605A(c), jointly and severally, in an amount to be determined herein.

## COUNT II

## PERSONAL INJURY – ASSAULT AND BATTERY
### By Injured Servicemember Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

158.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations forth in all the foregoing paragraphs as if fully set forth herein.

159.    Hezbollah, with the material support of the Defendants Iran, MOIS, and the IRGC, violently and forcefully committed illegal acts during the bombing of the Khobar Towers complex.

160.    Defendants and its agents intended to and did cause great physical injury and harm, and fear and apprehension of imminent harm to the Injured Servicemember Plaintiffs, by detonating and/or causing the detonation of a powerful explosive device, described as the equivalent of 20,000 pounds of TNT, in their immediate proximity, causing numerous casualties and destruction.

161.    These willful, wrongful and intentional acts constitute a violent assault and battery upon the bodies and minds of the Plaintiffs who are surviving servicemembers and the Estate of Lt. Co. Steven Peter Goff, M.D.

162.    As a direct and proximate result of the willful, wrongful, and intentional acts of Hezbollah, with the material support of the Defendants Iran, MOIS, and IRGC, each and every one of the Injured Servicemember Plaintiffs, suffered extreme mental anguish, physical injury, pain and suffering, past and future economic losses including medical expenses, lost income and loss of earning capacity.

163.    For the reasons stated above, Defendants are jointly and severally liable to the Injured Servicemember Plaintiffs for their injuries in an amount to be determined herein.

## COUNT III

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Injured Servicemember Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

164.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

165.    Defendants provided material support to Hezbollah with the intent that Hezbollah would carry out attacks that would cause Injured Servicemember Plaintiffs severe emotional distress.

166.     The actions of Defendants Iran, MOIS, and the IRGC in providing substantial material support to its agent, Hezbollah, to carry out the attack on the Khobar Towers, with the intent to kill and injure U.S. military personnel, and which in fact did kill and injure many U.S. Air Force personnel, including Injured Servicemember Plaintiffs, constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

167.    The extensive planning and preparation which went into the attack on the Khobar Towers complex further underscore the malicious and heinous nature of the terrorism involved.

168.    The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the U.S. Air Force personnel injured in the bombing.

169.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Injured Servicemember Plaintiffs' suffering severe emotional distress.

170.    As a direct and proximate result of the actions of the Defendants Iran, MOIS and IRGC and its agent, Hezbollah, the Injured Servicemember Plaintiffs have suffered severe mental

anguish and emotional distress, pain and suffering, and past and future economic loss, including medical expenses, lost income and loss of earning capacity.

171.   For the reasons stated above, Defendants are jointly and severally liable to Injured Servicemember Plaintiffs for their intentional infliction of emotional distress in an amount to be determined herein.

## COUNT IV

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### By Immediate Family Member Plaintiffs
### (Under 28 U.S.C. § 1605A)

172.   Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

173.   The actions of Defendants in providing material support for the bombing of the Khobar Towers complex constitute extreme and outrageous conduct intended to cause Plaintiffs severe emotional distress.

174.   The Immediate Family Member Plaintiffs were directly affected by the Defendants' conduct of providing material support to Hezbollah, to carry out extrajudicial killings against the Injured Servicemember Plaintiffs housed at the Khobar Towers complex.

175.   The actions by Defendants were undertaken deliberately and recklessly, with the knowledge that they would cause severe emotional distress to the Immediate Family Member Plaintiffs.

176.   The Immediate Family Member Plaintiffs were aware that the bombing of the Khobar Towers had taken place, knew that their loved ones were present at the Khobar Towers, feared that their loved ones were killed or injured and ultimately learned that their loved ones survived but were injured in the Attack.

177.    The actions of Defendants were intended to and did, in fact, cause the bombing and subsequently were the cause in fact of the Immediate Family Member Plaintiffs suffering severe emotional distress.

178.    As a direct and proximate result of actions of the Defendants Iran, MOIS, and IRGC and its agent Hezbollah, the Immediate Family Member Plaintiffs suffered severe mental anguish and emotional distress, pain and suffering, and past and future economic loss.

179.    For the reasons stated above, Defendants are jointly and severally liable to Immediate Family Member Plaintiffs for the intentional infliction of emotional distress, in an amount to be determined herein.

### COUNT V

### SOLATIUM, CONSORTIUM, PAIN AND SUFFERING
### By Immediate Family Members Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

180.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

181.    The actions of the Defendants have caused the Immediate Family Members Plaintiffs to suffer emotional distress, mental anguish, and loss of consortium and solatium.

182.    As a direct and proximate result of the willful, wrongful, intentional, and reckless acts of Hezbollah whose acts were funded and directed by Iran, MOIS, and IRGC, the Immediate Family Member Plaintiffs have been deprived of the assistance, society, companionship, services and other support of their loved ones who were injured by the Attack, for an extended period of time. The Immediate Family Member Plaintiffs are still deprived of the assistance, society, and companionship of the healthy, active, and productive young servicemembers, they knew and loved

prior to the terrorist attack described above. This has caused them to suffer, among other things, extreme mental anguish and emotional and physical pain and suffering.

183.    As a result, the Immediate Family Member Plaintiffs are entitled to damages for loss of solatium and loss of consortium, loss of services, pain and suffering, and past and future economic loss.

184.    For the reasons stated above, Defendants are jointly and severally liable to Immediate Family Member Plaintiffs in an amount to be determined herein.

**COUNT VI**

**WRONGFUL DEATH**
**By the Estate of Lt. Co. Steven Peter Goff, M.D.**
**(Under 28 U.S.C. § 1605A(c))**

185.    The Estate of Lt. Co. Steven Peter Goff, M.D., repeats, re-alleges, and incorporates by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

186.    As a direct and proximate consequence of the willful, wrongful, and intentional acts of Defendants Iran, MOIS, and IRGC, Lt. Co. Steven Peter Goff, M.D. suffered severe physical injury, extreme mental anguish, conscious pain and suffering that ultimately led to his suicide on September 4, 2006.

187.    Defendants are jointly and severally liable for damages to the beneficiaries of the Estate of Lt. Co. Steven Peter Goff, M.D., including but not limited to, the value of Lt. Co. Steven Peter Goff, M.D.'s lost support and services, lost income, loss of benefits, loss of companionship, and future loss of support, services, income, benefits, and companionship from the date of his death, September 4, 2006, as well as the medical, funeral, and burial expenses.

188.     A decedent's heirs at law, through the decedent's estate, may bring a wrongful death action under section 1605A(c).

189.     The beneficiaries of this claim are Lt. Co. Steven Peter Goff, M.D.'s mother, Plaintiff Shirley Ann Goff; his sisters, Plaintiff Antionette Hovel and Plaintiff Kathryn Mary Ableidinger; and Plaintiff the Estate of Lt. Col. Steven Peter Goff, M.D.

### COUNT VII

### SURVIVAL CLAIM
### By the Estate of Lt. Co. Steven Peter Goff, M.D.
### (Under 28 U.S.C. § 1605A)

190.     The Estate of Lt. Col. Steven Peter Goff, M.D. by its personal representative, repeats, realleges and incorporates by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

191.     The attack on Khobar Towers constituted battery, assault, and intentional infliction of emotional distress upon Lt. Co. Steven Peter Goff, M.D.

192.     As a direct and proximate consequence of the willful, wrongful, and intentional acts of Defendants Iran, MOIS, and IRGC, as described above, Lt. Col. Steven Peter Goff, M.D. endured extreme mental anguish, physical and psychological injury, and conscious pain and suffering from the date of the Khobar Towers bombing on June 25, 1996, until his death on September 4, 2006.

193.     Defendants would have been liable to Lt. Col. Steven Peter Goff, M.D. had he lived, for the injuries they inflicted on him.

194.     Plaintiffs allege all damages recoverable under a survival claim, on behalf of the Estate as beneficiary, including but not limited to Lt. Col. Steven Peter Goff, M.D.'s pain and

suffering, mental anguish, and economic losses, from the time of the injury of Lt. Col. Steven Peter Goff, M.D. in the Khobar Towers bombing on June 26, 1996, until his death on September 4, 2006.

## COUNT VIII

### PUNITIVE DAMAGES
### By All Plaintiffs
### (Under 28 U.S.C. § 1605A(c))

195.    Plaintiffs repeat, re-allege, and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

196.    The actions of Defendants, acting in concert with their Agent Hezbollah, to carry out their unlawful objectives were malicious and willful, wanton and reckless in their disregard for human life and limb, and caused severe injuries to all the Injured Servicemember Plaintiffs and untold pain and suffering to the Immediate Family Member Plaintiffs.

197.    The actions of Hezbollah were undertaken at such time as they were operating for and in the service of Defendants Iran, MOIS, and the IRGC, and in concert with those Defendants, and therefore Defendants are both vicariously and directly liable to Plaintiffs.

198.    Defendants' conduct was criminal, outrageous, extreme, wanton, willful malicious, and constitutes a threat to the public warranting an award of punitive damages.

199.    For the reasons stated above, Defendants Iran, MOIS, and the IRGC are jointly and severally liable to Plaintiffs for punitive damages.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs request that the Court grant judgment in their favor and against Defendants, and grant Plaintiffs:

A. Compensatory damages including, but not limited to, physical injury, extreme mental anguish, pain and suffering, emotional injury, past and future economic losses, including medical expenses and lost income and earning capacity, loss of solatium, loss of consortium, loss of services, survival, and wrongful death, in favor of each of the Plaintiffs as against Defendants jointly and severally, in amounts to be determined by the Court;

B. Punitive Damages in favor of each of the Plaintiffs as against Defendants jointly and severally in the amount determined by the Court;

C. Pre-judgment and Post-judgment interest at the maximum rates allowable by law;

D. Any other and equitable relief that the Court deems just and necessary.


Dated:    January 13, 2022                     Respectfully submitted,

                                               /s/   Gavriel Mairone__
                                               MM~LAW, LLC
                                               Gavriel Mairone, Esq.
                                               Bar No. 156461
                                               Adora Sauer, Esq. (Pro Hac Vice)
                                               Illinois Bar No. 6256703
                                               980 North Michigan Avenue, Suite 1400
                                               Chicago, IL 60611
                                               Tel: (312) 253-7444
                                               Fax: (312) 275-8590
                                               ctlaw@mm-law.com;
                                               adora@mm-law.com

                                               *Counsel for Plaintiffs*